## SIMS v. MOORE.

1. **Verdict:** EVIDENCE TO SUPPORT: SURGICAL MALPRACTICE. Where the expert testimony, to the effect that the dislocated arm in question was properly reduced, bandaged and treated by the defendant, was uncontradicted, but it yet appeared that the arm was not restored, and the evidence was very strong, but not without conflict, that the arm had been injured, after the treatment, by the plaintiff's negligence, *held* that this court was not warranted in setting aside a verdict for plaintiff, as not being supported by the evidence.

2. **Evidence:** SURGICAL MALPRACTICE: HEARSAY. What a third party —another physician—said to a witness for plaintiff about the incurable condition of the dislocated arm, after treatment by defendant, was not divested of its character as hearsay, simply because it was afterwards related to the defendant in a conversation with him. If the opinion of such other physician was desired, he should have been introduced as a witness.

3. ———: PRACTICE: REBUTTING TESTIMONY OBJECTED TO. Where testimony was admitted over defendant's objection, he did not waive his objection by introducing testimony to rebut the testimony objected to.

*Appeal from Page Circuit Court.*

THURSDAY, JUNE 7.

THIS is an action for damages caused, as it is alleged, by the failure of the defendant, who is a surgeon, to properly treat a dislocation of the elbow joint of plaintiff's arm. There was a trial by jury, and a verdict and judgment for the plaintiff. Defendant appeals.

*Hepburn & Thummel* and *G. B. Jennings*, for appellant.

*W. P. Ferguson* and *Clark & Parslow*, for appellee.

ROTHROCK, J.—I. The plaintiff, who is a minor, dislocated his elbow joint, while at play with some boys at school, in February, 1880. He testified upon the trial in the court below that he was past seventeen years old at the time of the trial, which occurred in December, 1880. Immediately after the accident, the defendant was called to treat the injury, and, with the assistance of Dr. Eckerson, the dislocation was, as the defendant claims, properly reduced, and the arm bandaged in the usual and proper manner. Sometime afterwards it was discovered that the arm was out of line, and that there was then a slight dislocation. The theory of the plaintiff on the trial in the circuit court was, that the defendant negligently failed to reduce the dislocation in the first instance, and that by reason thereof the injury has become permanent. The defendant claims that the reduction of the dislocation was perfect, and the treatment in all respects proper, and that, notwithstanding the plaintiff and his parents were cautioned that the plaintiff must be kept quiet, the plaintiff engaged in wrestling, playing marbles, and other physical exercises, by which his arm

1. VERDICT: evidence to support: surgical malpractice.

Sims v. Moore.

became re-dislocated, and that, after the re-dislocation, the defendant offered to reset it, and that plaintiff and his parents refused to allow him to do so. No objection was made to the instructions given by the court to the jury, but the defendant insists that the verdict is wholly without support from the evidence. It must be admitted that the affirmative testimony of the witnesses, that the dislocation was properly reduced and properly treated by the defendant, is not directly contradicted by any witness. There is no affirmative evidence that the defendant was chargeable with any negligence. On the contrary, all of the physicians who testified upon the trial stated that the treatment of the injury by the defendant, as described by him and Dr. Eckerson, fully accorded with correct surgical practice. But the fact remained that the arm was not restored, but continued to be seriously injured. While it was true that there was a very great preponderance of evidence that some days after the accident the plaintiff engaged in wrestling with another boy, and was thrown to the ground, which caused much pain in the injured elbow, we are not prepared to say that the jury were not warranted in finding that there was no re-dislocation, and that the arm was negligently and improperly treated in the first instance.

. II. After it became evident that the plaintiff's arm was not getting well, his father, Michael Sims, went with him to

2. EVIDENCE: surgical malpractice: hearsay.

Chicago, and there consulted Drs. Green and Andrews. Michael Sims was examined as a witness upon the trial, and he was allowed to state to the jury that, after his return from Chicago, he told the defendant that Dr. Green said, as soon as he had seen the arm, "that he could do nothing for it; that it was too late, and that he could not do it." This evidence was objected to, and the objection was overruled, and the defendant excepted. It is true as a general rule that, where it is sought to prove admissions made by a party to an action, it is competent to prove the whole conversation in which it is claimed the admissions were made; and this may oftentimes consist, in part at least,

of a repetition of a communication between the witness and a third person. But this record does not disclose any such purpose. The only effect of the evidence objected to was to allow the witness to detail the opinion of Dr. Green to the jury, under the guise of a conversation with the defendant. Whether intentionally done or not, the opinion of Dr. Green as to the character of the injury was thus allowed to be given to the jury, and because this opinion was first made known to the defendant, does not divest it of its character as hearsay evidence. We think it should have been excluded.

The argument that the defendant afterwards, when he was a witness, testified to the same conversation, and to what was claimed to have been said by Dr. Green, was no waiver of his objection to this evidence. It was allowed to go to the jury over his objection, and he had the right to meet it with his own explanation, without waving his objection to it. If the plaintiff desired to introduce the professional opinion of Dr. Green to the jury as evidence, he should have taken his testimony as a witness.

3. ——— : practice: rebutting testimony objected to.

III. It is urged that one of the jurors was not a resident of this state, and, therefore, not qualified to serve as a juror; and certain affidavits were introduced to show that fact. This question we need not determine, as it will not arise upon a new trial. Other objections made to the rulings of the court upon the admission and exclusion of evidence we do not regard as well taken.

For the error in admitting the evidence as to the opinion of Dr. Green, the judgment will be

REVERSED.